18-2311. Attorney Goldenberg, you reserved three minutes of your time for rebuttal, correct? Yes, Your Honor. Did I pronounce that correctly? It's In Re Fote or Fote? It's Fote. Fote. Okay. You may proceed. Thank you, Your Honor. May it please the Court, Julie Goldenberg on behalf of Mr. Charles T. Fote. The Board erred in finding Mr. Fote's claims patent ineligible because it misunderstood them. The claims are not directed to using a single third-party intermediary. The claims expressly disclaim the traditional third-party intermediary and instead require different intermediaries. So what if the Board had defined the abstract idea as being electronic fund transfer using multiple third-parties? Would that have satisfied your understanding of what the abstract idea is that the claims are directed to? No, because we still believe that the claims are not directed to the abstract idea of using multiple third-party intermediaries. They're directed to using multiple third-party intermediaries in a very specific and concrete way, because the claims tell us exactly what each party does. The claims tell us that the payment broker does not know who the third party is. The claims tell us that the funding source does not know the third party's financial information. The third party does not know who the payer and the broker are. And importantly, the payee and the bank do not know. Those are pretty general ideas, right? Aren't they pretty general ideas? This person doesn't know what this person knows, who doesn't know what this person knows, or entity. They don't know what they know, but there's nothing specific about the type of communication they have. It's more just that only certain entities are going to know certain information, which seems more abstract, more of an idea, than something that's a specific technological solution to a technological problem. So I disagree with that. And if you look at the claims, which are reproduced on page 8 of our brief, as well as in the appendix, you'll see all of the very specific detail. And that's something that really distinguishes these claims from the claims at issue in ALIS. If you look at the claims at ALIS, they're short, and they just say, do it. They don't tell you how. Whereas in these claims, they tell you exactly how to do it. They tell you who transmits what. They tell you who has what information when. And that is the concrete information that is enough to pass Step 1 muster. This also has an advantage, and it's a claimed advantage, that breaks the chain of data transmission that occurs in electronic payment systems, and it thereby provides the claimed enhanced security. The director says as much in her brief on page 35, saying, and I quote, the payment broker facilitates the third-party payment system, which provides the benefit of increased data security. This additional layer of security was not found or used in the conventional environment and helps avoid hacking attacks. We already touched on Step 1 of the analysis and the reasons why the board's abstract idea as defined as a single inter-party intermediary. Can I ask you this question? So sometimes we've had cases in which claims are very, very lengthy, and nevertheless, we've held them to be ultimately ineligible because they amount to a kind of excruciating specification of little steps that are more or less inevitable in a more general word. You know, communicate with somebody, and you could say, walk to the desk, pick up the phone, punch this number, this number, this number, and you could make it extremely long without adding any, you know, legally material information. Why is the, where are the details here in, you know, particularly the very long paragraph, but in the various long, in the claims, different in kind from that kind of always possible but ultimately immaterial specificity? Well one reason is the record demonstrates that these claims are not a fundamental economic practice because they're novel. So these claims are different from just saying, the examiner would have been able to find prior art disclosing this if that were the case. So the argument is not that the claims are long and therefore they're patent eligible. It's that they're detailed and specific, and they provide specific actions by specific parties, and that is enough to transform the abstract idea at step two. One of the things I just want to say is that it can't be that just because something is novel and non-obvious, it's eligible. Just like the opposite isn't true. We don't want to merge the tests, right? Oh, absolutely. So what is it that makes it concrete and not just an abstract idea? Well first, Your Honor, just to be clear, this court has stated that there is overlap between the two tests. Certainly not merger, but overlap. And in these particular claims, let's look at page eight of our brief where the claims begin. And you can see that we have the different parties, and starting at B, it mentions the brokerage server. And if you look at Roman numeral number three, it says receiving an instruction that a payment be made electronically by someone other than the payment broker who's associated with the payee. But it also tells us that the payer gets to select the payment method. Then if you go to number four, Roman numeral number four, it retrieves the information identifying the payer's selected funding source. So the payer doesn't need to do that. If you had your phone, you wouldn't need to retrieve your credit card numbers, which is an added security benefit, especially if you were in a public place or on a public Wi-Fi network. You go down to number six, Roman number six, to cause the payment to be made electronically to the payee on the funding source's behalf by a third party other than the payment broker. So we're, again, clarifying the different roles of the third party. If you go on to letter C, you'll see similar limitations explaining what the funding source does in response to instruction from the payment broker, it instructs a third party other than the payment broker to make the payment in the third party's name. And here's another key to this claim, thereby preventing divulgation of the payee to the identity of the payer. Now, a lot of claims say, oh, we have wonderful solutions to this problem, but they don't claim the solution. These claims are concrete because they have exact and explicit directions and they claim the solution. And that's enough to pass Alice step one, because the abstract idea should not be distilled down to just being using multiple third party intermediaries. So, would you say that this protecting privacy and security vulnerabilities, that that's done by allocating different responsibilities among different players? Absolutely. Okay. So it's the fact that you allocate responsibility among different players that make this work. Yes. And that is the new novel approach. So if you have only one player protect the identity of the payee? Not in an electronic payment environment. And that's why this solution, this claim solution. You have a broker here to begin with, a broker. Why is it that I can't hand some money to Judge Toronto and he goes and pays somebody and doesn't tell them where the money came from? So that solution worked fine in the non-electronic environment and that's the prior art. And it was... So all you've done, you've added more middle persons. But we've added, adding more middle persons wasn't necessary in the prior art because the solution... That's all you've done. You're allocating responsibilities and this is why I asked you and you said yes. This pen is about allocating responsibilities among multiple players. Such that each player does not have all the information. And that breaks the chain of communication and it's a technological solution to a specific technological problem because the example... Why aren't the claims then directed to privacy and security vulnerabilities by using an intermediary, just one person? Because that would not solve the problem. That one person would then have all the information. And in an electronic payment environment, when payments are sent, they come with chain of transaction details that are passed on from one entity to the other. So this... So the more players you add, the more you protect the privacy of the payee? That is the general idea. Now these claims are directed to one specific way of doing it, which has three intermediary players. But if you had 20, then it'd even be greater protection, right? And that could be a different claim or maybe these claims are written broad enough to cover it. But it's not an ALICE issue. It's not a problem of whether or not... These claims should still pass... If you had 20 players or 30, then there'd be a higher level of protection? There's no doubt that there could be other solutions. So yes, perhaps it would be, but perhaps it wouldn't be as cost effective. These claims require three and these claims are written to solve the problem, which is ALICE. Now, whether or not somebody could come up with a way of using 20 that would infringe or wouldn't infringe these claims is a separate issue. But the only issue before the court today is whether the claims pass the ALICE analysis, steps one and step two. Now even if this court were to say the abstract idea is use multiple third-party intermediaries, then the claims... We think it's not for the reasons I've already discussed, but then the claims would pass at step two. And the reason is because it has the very concrete and specific steps that comprise the inventive concept. The very steps that I've just explained to you of each party having access to different information. So the payment broker doesn't know who the third party is. So the funding source doesn't know the third party's financial information. And the payee and its bank don't know the identity of the funding source. These claims prevent a situation where a payee receives some money and then basically has a chain of transaction information and can go back and take more out of your bank account. For example, when you're buying something on the internet or in a mobile payment environment. So they prevent that chain of reaction. Your Honors, rather than consider the inventiveness of the claimed restructuring of roles in electronic payment system, the Board erred by focusing its analysis at step two on the conventionality of the computer hardware components. But Mr. Foti never argued that these portions of the claims constituted the inventive concept. The inclusion of conventional components does not render the inventive concept of the specific roles of third parties any less inventive. Here the inventive concept is the non-conventional, non-generic arrangement of the additional third party intermediaries in their servers and the specific roles they do, which solve the problem rooted in electronic payment world. So your argument is not that technology is being used in any special way here. It's just from what you, I gather from what you said that the technology is being used in its normal usage. Our argument is that the individual components are being used in their normal usage. However, when combined, they're being used in a non-conventional way, which is the way that allows the prohibits transmission of all payment information from the payer to the payee. And that is the non-generic inventive concept here at step two. Finally, at a minimum, this Court should remand to the Board in view of Burkheimer. In view of that case in the Patent Office. Can I interrupt you? Sure. I mean, I understand your position. Why would we remand? Don't we have the right to make fact findings? I mean, Burkheimer is a summary judgment case. This is a case where the Board and the examiner, they get to make fact findings. And they're just reviewed for what? Substantial evidence, right? So the Appellate Court can make fact findings if there's only one reasonable fact finding that should be made. But aside from that, the examiner, in view of Burkheimer, should have provided support for his conclusion that the combination of elements were well understood, routine and conventional. Didn't they point to some admissions in the specification itself? They point to admissions that the individual components were routine and conventional. But there's nothing in the specification, nor is there any evidentiary record, that the combination was routine and conventional. And that's why this case is similar to the other cases that this court has found to be patent eligible at step two. You're into your rebuttal time. Okay. Would you like to save it? Yeah. You can go on if you want. I'll just finish this point, which is that that's why it's similar to McRow and DDR, which were also cases that involved conventional components, but they were arranged in a new way and used in a new way. I'll reserve the rest of my time. Thank you. Good morning, Your Honors. May it please the Court. Let me begin with this whole notion, I think, of this whole multiple third parties, which I want to say, first of all, was never really raised as a multiple third parties argument before the Court. But as I understand what they're saying, and they, in the specification, they talk about different things as being third parties. They talk about the funding source, the brokerage server, the broker, the funding server, various different components. I think it may be as helpful to start with figure three, because that is sort of what sort of lays out how the system works. Figure three is at 35 of the record. And what we see here, and this is described at 68 to 69 of the record in the specification, is at the top there's 320 and 310, which are the payer and payee. And then below, at the bottom of the page, is basically the funding sources. So that's like your bank. And so for each, they're inverted, but it's the payee's real account or funding source. And then on the right is the payer's funding source. And then, because this is electronic, there are servers for each of these. And then there's the payment broker on the right, which is 330. It's a payment broker server. And that's controlled by the payer and basically allows the electronic payments to be made between the payer and payee. So that's, in a general sense, what the invention described is about. Then there's the particular claimed embodiment, which is described at 53 to 54 and 91 to 93 of the record. And that adds on. It's not actually pictured here, but it adds on this third party. And the whole point of that is to add a third party to protect the payer's information from being divulged to the payee. And that is what the board and the examiner were looking at and said that it seems very similar to, analogous to Alice in terms of a third party intermediary. Can I just ask, you used the word embodiment. I thought that the claims require a certain amount of, I love this word, non-divulgation of information. They do. And where they describe that, it's in the context of talking about the third party and having the third party between the payer and payee. So if I look at Figure 3, can I get out of Figure 3 this, let's just call it quasi-anonymity or actual anonymity or something, information suppression aspect? That's not in this Figure 3, right? That's not in this, no. And you said something about an embodiment, I guess, on Figure 4, but it is in the claim. Right. And so I was saying the claim is directed to that particular embodiment, which then has this third party added on, sort of overlaid on top of what you see in Figure 3 is this notion of a third party. And that is sort of the meat of the claim that's described at the bottom of Page 24, both with respect to the brokerage server, bottom of Page 34 up to the top of 25. It talks about the third party making payments to the payee and then being reimbursed from the payer. And the purpose of that is so that the information, and specifically the real account and the funding source, which is exactly in a third party intermediary sort of in the paper world situation, is what if you were making a payment to Judge Reyna. Oh, he was making a payment to me. Oh, okay.  And you, Judge, stole in the middle. I lost a bit on the asking. That would protect you from getting access to his bank information or his account information by having the third party in the middle. And so that's what's described here in the claim. It's also described in the context of the funding source server, and that's at the bottom beginning at 25, beginning at about line 23. And, again, the same thing. It's a payment with the third party in the middle, and the purpose is to protect the payer's real account and funding source information. So there are lots of arguments in the briefs about other sorts of potential problems that they're trying to solve. None of those are... Can I ask about one of those? I just want to hear your response to the argument on the ordered combination. That is that the board kind of gave short shrift to, on step two, whether the ordered combination was conventional or not, or maybe that there wasn't substantial evidence to support its finding that that was conventional. What is your response? No, it's not short shrift. I see very specific findings by the board at page 9 and page 11 and 12 of the record where they cite two portions of the specification that are admitting that these computer components, the servers, et cetera, in fact, the payment broker service. I think the argument, though, is that, on behalf of Mr. Foti, is that those components are individually admitted to be conventional, but there's nothing that admits them in their ordered combination to be conventional. I'm just wondering what your response is. There could be a response that, no, there is evidence that it's conventional, or the response could be something along the lines of that particular arrangement is brought about by the abstract idea itself. I mean, there's a lot of responses, but I want to make sure that you're focusing on the specific question. Right, and I was going to get to that. At page 10 of the record, the board looks to the examiner's findings about that, and then again at 11, the bottom of, I'm sorry, 15, sorry, 15 to 16, the board again engages very thoroughly with looking at the ordered combination. So at 10, it talks about the examiner and quotes from the examiner that the claims do not require any nonconventional computer network or database or even a nonconventional non-generic arrangement of non-conventional pieces, but merely call for performance of the claim facilitation of electronic fund transfer, which is like in paragraph 3, on a set of generic computer components. And then again at page 15 to 16, it analyzes it again on its own and says there's. . . Are you looking at the bottom paragraph from page 17? There's nothing that's not already present when the components are considered separately, when they start to look at them as an ordered combination, and says the claim doesn't, for example, improve the functioning of the computer, and there's nothing significant anymore. It goes on to the next page and describes and discusses the particulars of the components individually as well as an ordered combination. And I just wanted to briefly point out that the various problems that they are trying to highlight in their briefs about auditability, man-in-the-middle attacks, and hackers are not actually supported in the specification. Those are all attorney arguments. When they talk about auditability and the potential inclusion of chain or transaction details, they cite to 210 and 211 of the record, which is a response to an office action. The specification doesn't mention auditability. When it talks about audit, it actually talks about the benefits of the system is that it aids in complying with audit requirements. There's about five sites there. Just help me understand something. Is it the case that in the application process, the applicant is limited on these issues to what's in the spec? Do you mean in terms of just helping? I understood you to be saying these arguments about hacking and whatnot are not in the spec. So I thought, well, do they have to be in the spec? Suppose they were in, and I think you made a reference to a response to an office action. Isn't that the way you create a record before the examiner? That is arguments that could be made before the examiner, but the examiner engages in understanding the claims in light of the specification, and here there is nothing in the specification. Let me maybe just ask a variant. What is the Berkheimer summary judgment counterpart in the PTO administrative world on an application? Not an adversarial IPR kind of stuff, just on this. So you're saying that once there's a preinterfacial case. Examiners get to make fact findings. Right. Applicants get to put in facts. But they can't change the invention and what the invention is. The invention is set out in what's described in what's in their claims and what is in the specification. Did the applicant put in some submission to the examiner that, for example, said steps we have required in the claim help reduce hacking? I don't think that would change the nature of the invention in any way. If the inventors themselves have not contemplated that. But just on the factual point, did the applicant put in something to the examiner that said that? There was attorney argument made. There wasn't any sort of declaration, evidentiary declaration. And the same is true of the man-in-the-middle attacks. They cite to their appeal brief and their response to an office action. And the same with hackers. In fact, the only discussion of hackers in the specification is with reference to an account reference number that could be used instead of an account number to protect against hackers. So these points are simply the specification just doesn't bear it out that these are the intention or that there's any special arrangement here in terms of computer components to protect against these kinds of problems. If there are no additional questions, I will see the remainder of my time. I ask that this court affirm the board. Thank you. We thank you, Counselor. You have a little under two minutes. Thank you, Your Honor. Just a few brief points. First of all, opposing counsel mentioned waiver. If you look at pages six to seven of our reply brief, we cite many circumstances where we made the exact same argument about the different third parties and what they do and why that's important both to step one and step two analysis. Second is opposing counsel continued to refer to this invention as involving a third party. I think the court understands that this invention does not cover a third party. We amended the claims during prosecution to require multiple third parties, so there could be no argument that these claims cover a third party, nor could the abstract idea be directed to something that the claims explicitly exclude. If you look at appendix page 15, there's a line from the examiner regarding the ordered combination where it says, considered as an ordered combination, the computer components of appellant system add nothing that is not already present when the components are considered separately. That's it. That's the only analysis we have from the board. I think I said the examiner earlier, the board on ordered combination, and that's conclusory. There's no citation to evidence, and there's no evidence on the record to support that. And finally, also regarding the ordered combination issue, you don't need to improve the way a computer functions to show that there's something unique in the ordered combination to pass Alice, and we've seen that in several of these cases, most recently in Ankara, as well as another case that involved sensors, FAILS Vision X v. the United States, where using traditional sensors in a new way, in a new combination of ways, was indeed enough to pass Alice. Thank you very much.